[Cite as *State v. Dobson*, 2014-Ohio-3710.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100418

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BILL W. DOBSON

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-571055

**BEFORE:** Blackmon, J., S. Gallagher, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 28, 2014

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Daniel A. Cleary
Assistant Prosecuting Attorney
the Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1}    Appellant Bill W. Dobson appeals his convictions and assigns the following errors for our review:

> I. The trial court erred in entering conviction of rape which was based upon insufficient evidence, in derogation of defendant's right to due process of law under the 14th Amendment to the United States Constitution.
>
> II. The trial court erred in entering conviction of kidnapping on Count 4 which was based upon insufficient evidence, in derogation of defendant's right to due process of law under the 14th Amendment to the United States Constitution.
>
> III. The trial court erred in entering conviction of domestic violence which was based upon insufficient evidence, in derogation of defendant's right to due process of law under the 14th Amendment to the United States Constitution.

{¶2}    Having reviewed the record and pertinent law, we affirm in part, reverse in part, and remand to the trial court to vacate Dobson's convictions for rape and kidnapping.    The apposite facts follow.

{¶3}    On February 14, 2013, the Cuyahoga County Grand Jury indicted Dobson on one count each of rape, felonious assault, domestic violence, with specification of prior offense, and two counts kidnapping, both with sexual motivation specification. The grand jury also indicted Dobson on one count of menacing by stalking, and one count of intimidation of a crime victim or witness.    On February 19, 2013, Dobson pleaded not guilty at his arraignment.

{¶4}    On March 5, 2013, the trial court referred Dobson to the psychological clinic to determine his competency to stand trial, sanity at the time of the act, and to

determine his eligibility for the mental health docket. On March 22, 2013, Dobson was transferred to the mental health docket and assigned a new judge.

{¶5} On April 16, 2013, both parties stipulated to the psychological report that indicated Dobson was competent to stand trial and that he was sane at the time of the acts alleged. On June 25, 2013, a jury trial commenced on all charges except for domestic violence charge, which Dobson elected to have tried to the bench.

## Jury Trial[1]

{¶6} At trial, the state presented the testimony of four witnesses including E.C.,[2] who testified that in August 2012, following a separation from her husband, she became romantically involved with Dobson. E.C. testified that Dobson immediately began spending "every day" at her apartment and began keeping personal items such as shoes, clothing, television, and a fish tank at the apartment. E.C. stated that they had sexual intercourse every day throughout this time. E.C. stated that about two months later, the relationship soured, Dobson left and took all his personal items, except his fish tank.

{¶7} In the latter part of November 2012, the romantic relationship resumed when Dobson attended the funeral of her cousin Leondre. Dobson spent the following three nights at E.C.'s apartment. One morning after Dobson had spent the night, they woke up and discovered that his car had been stolen. Dobson was very upset and

---

[1]Dobson only challenges certain counts and elements, therefore we will limit the facts to the issues presented on appeal.

[2]The complaining witness will be referred to by her initials in accordance with this court's established policy regarding non-disclosure of identities in all sexual abuse cases.

accused E.C., as well as her estranged husband, of complicity in the theft of his car. Nonetheless, Dobson walked E.C. to the bus stop, so she could go to work.

{¶8} When E.C. returned home from work, Dobson was still upset that his car had been stolen. A few minutes after E.C. arrived home, and individual, who peddled counterfeit CDs and who she knew only as "Monster," pulled into the driveway and rang her doorbell. E.C. had purchased CDs from Monster in the past, but Dobson became upset that Monster had come to the house. Dobson began accusing Monster of being involved in the theft of his car and being romantically involved with E.C. E.C. testified that when she denied being romantically involved with Monster, Dobson told her to "take her ass in the house."

{¶9} E.C. testified that a few moments later, Dobson re-entered the house and struck her on the side of her face. E.C. said that she punched Dobson but slipped and fell to the ground, where Dobson continued to physically assault her while accusing her of having an affair with Monster. E.C. continued to deny any romantic involvement with Monster, but Dobson kept hitting her, then finally stopped and went to smoke a cigarette.

{¶10} E.C. testified that after the assault ended, she did not know what to do. She thought about calling the police, but just tried to diffuse the situation because Dobson appeared as if he would punch her again. E.C. received a phone call from a friend but did not tell her friend anything about the assault because Dobson was nearby.

{¶11} E.C. thought about going out to get something to eat in the hopes that somebody would notice her bruises. E.C. stated that they walked over to the Burger

King near East 55th Street, but did not buy anything and then went to McDonald's where she sat for a time in the bathroom crying. They purchased food at McDonald's, returned home, ate the food they had purchased, and she drank half of Dobson's milkshake.

{¶12} E.C. testified that after they ate, they retired to the bedroom, laid in bed and watched two movies. After watching the two movies, Dobson asked to have sexual intercourse; she told him that she was not "exactly in the mood for that" and Dobson responded "you my bitch." E.C. testified that she told Dobson that she was going to wash up first, but he stated he "likes his pussy sweaty." E.C. testified that they proceeded to have sexual intercourse and then went to sleep.

{¶13} The following morning, Dobson walked E.C. to the bus stop and offered to ride on the bus with her to work, but she declined. After she arrived at work, she informed her boss that she and Dobson had fought the night before and that she needed to go to the hospital. E.C.'s mother arrived and took her to the hospital.

{¶14} E.C. did not tell the hospital personnel that she had been raped, and when the police arrived, she did not tell them that she had been raped. E.C. testified that after leaving the hospital, she did not return to her apartment until approximately December 22, 2012. When E.C. returned to her apartment she discovered it had been burglarized. E.C. began getting text messages from Dobson threatening her and her estranged husband for the theft of his car.

{¶15} The jury found Dobson guilty of rape, guilty of attempted felonious assault, guilty of kidnapping in Count 4, without the sexual motivation specification, guilty of

kidnapping in Count 5, with the sexual motivation specification, guilty of menacing by stalking, but not guilty of intimidation of a crime victim or witness. The trial court in the matter tried to the bench, found Dobson guilty of domestic violence.

{¶16} At the sentencing hearing on August 21, 2013, the trial court merged Count 1, rape, and Count 4, kidnapping, and the state elected to have Dobson sentenced on Count 1. The trial court imposed a prison sentence of eight years. The trial court merged attempted felonious assault, domestic violence, and kidnapping in Count 5, and the state elected to have Dobson sentenced on the kidnapping. The trial court imposed a prison sentence of eight years. In addition, the trial court imposed a prison sentence of one year for menacing by stalking. Further, the trial court ordered Dobson to serve the prison terms concurrently.

## Sufficiency of Evidence

{¶17} In the first assigned error, Dobson argues that the state failed to present sufficient evidence to support the rape conviction.

{¶18} The issue raised in this assigned error is whether the state's evidence is adequate to show all the elements of rape. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264; *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. We are required to resolve this question after reviewing the evidence in the light most favorable to the state and determining whether a rational fact-finder could find the elements of the offense proven beyond a reasonable doubt.

*State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013- Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶19}** In the instant case, the element of rape that is at issue is "purposely compels the other person to submit by force or threat of force." The following facts were adduced from the state's primary witness:

Q. Okay. As you're in bed, what happens next after the movies, what does Bill do?

A. You know, I guess —

Q. You can't guess. What happens?

A. He felt comfortable enough to want to have sex. I said I'm not exactly in the mood for that. Then I said, okay, well, let me go wash up in the bathroom. I was going to lock myself in there but he was like no, I like my pussy sweaty, you're my bitch, like that.

Q. Let's back up. You said Bill felt comfortable enough to ask you for sex. Do you remember his exact words?

A. I don't.

* * *

Q. When he asks you for sex, what do you tell him?

A. I said I'm not exactly in the mood for that right now. Then I said okay, well then, let me go in the bathroom, wash up.

Q. What does he say to you when you said I'm not in the mood, if anything?

A. You my bitch. That's what he said.

Q. After he says you my bitch, what do you say?

A. I don't recall.

Q. Does he say to you my bitch before you say I'm going to wash up?

A. That was before.

Q. You my bitch, you then say, or correct me if I'm wrong because I might be — he asks you for sex. Let me start over. You tell him what?

A. I'm not exactly in the mood for that.

Q. His reaction to that is what?

A. You my bitch.

Q. Okay. At that point what do you say to him?

A. All right, let me go in the bathroom, wash up. Like I said, I was going to try to lock myself in there but he like, I like my pussy sweaty so no more protests. I say nothing else.

Q. When you say — we need exact words so we can understand everything. Let me go in bathroom, clean up, what are his exact words to you?

A. I like my pussy sweaty.

Q. And what happens next?

A. I had no more protests. It happened right then and there.

Q. Describe what he does.

A. I mean, okay, my pants came off, he stuck his dick in me. That's what happened. Tr. 312-314.

{¶20} It is axiomatic that the state is not required to prove that the victim resisted, but it is mandated that it proves that the defendant purposely by force or by the threat of force compelled the victim to engage in sexual conduct. When the state fails to prove purposeful force or threat of force, as a matter of law, the case for rape falls under the sufficiency standard of proof. From the above excerpt and elsewhere in the record, there

is no evidence that Dobson purposely compelled the victim to submit by force or threat of force.

{¶21} The state argues that *State v. Eskride*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1998), and *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), makes it clear that "a threat of force can be inferred from the circumstances surrounding the sexual conduct." We agree; however, the court in *Schaim*, went further and held that a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her to compel submission.

{¶22} Here, E.C. never testified that she believed Dobson would use force. E.C. testified that Dobson asked and she said okay and told him she wanted to get cleaned up and Dobson told her no. E.C. never stated that Dobson's "no" was anything other than a response to her statement.

{¶23} Nonetheless, the state argues the element of the threat of force might be inferred from the violence that occurred earlier that evening. It is true in child rape cases that the Supreme Court has used the inferred force doctrine and has held that force need not be overt or physically brutal, but can be subtle and psychological. As long as it is shown that the victim was overcome by fear or duress. Here, there is no evidence that E.C. was overcome by fear or duress as a result of the earlier assault. Consequently, as a matter of law, the element of force was not adequately shown by the state; accordingly, we sustain the first assigned error and vacate his rape conviction.

## Kidnapping

{¶24} In the second assigned error, Dobson argues the state failed to present sufficient evidence to support the kidnapping conviction.

{¶25} In the instant case, the jury found Dobson guilty of kidnapping in violation of R.C. 2905.01(A)(4) which provides as follows: "No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in [R.C.] 2907.01 * * * with the victim against the victim's will[.]"

{¶26} As discussed in the first assigned error, we found no evidence that Dobson forced E.C. to have sexual intercourse. Likewise, we find no evidence that Dobson removed E.C. by force or threat of force, nor restrained her in any manner to engage in sexual conduct. As such, the state failed to present the requisite evidence to support the kidnapping conviction; accordingly, we sustain the second assigned error and vacate the conviction for kidnapping.

## Domestic Violence

{¶27} In the third assigned error, Dobson argues the state failed to present sufficient evidence to support the domestic violence conviction.

{¶28} In the instant case, the trial court found Dobson guilty of domestic violence as proscribed by R.C. 2919.25, which provides in pertinent part as follows:

(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.

* * *

(F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

* * *

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

{¶29} Dobson contends that the state failed to prove that he was a family or household member, as defined in the statute. Dobson cites *State v. Williams*, 79 Ohio St.3d 459, 1997-Ohio-79, 683 N.E.2d 1126, paragraph two of the syllabus, for the proposition that the state had to prove the essential elements of "cohabitation" namely: (1) sharing of familial or financial responsibilities, and (2) consortium. Dobson contends the state failed to prove these two elements.

{¶30} Possible factors establishing shared familial or financial responsibilities include provisions for shelter, food, clothing, utilities, and commingled assets. *Id.* at 465. These factors are unique to each case, and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact. *Id.* The burden of establishing cohabitation is not substantial. *State v. Woullard*, 158 Ohio App.3d 31,

2004-Ohio-3395, 813 N.E.2d 964 (2d Dist.), citing *State v. Young*, 2d Dist. Montgomery No. 16985, 1998 Ohio App. LEXIS 5446. In determining issues such as whether two persons had cohabited for purposes of R.C. 2919.25(E)(2), "courts should be guided by common sense and ordinary human experience." *Id.*

{¶31} At trial, E.C. testified that from August through October 2012, Dobson spent every night at her apartment. This testimony, if believed, established that the two lived together within five years of the December 2012 incident. E.C. also testified that during that time period, Dobson kept his clothes, shoes, television set, and a fish tank at her apartment. In addition, E.C. testified that during this same time period, she helped Dobson pay for his car. Again, this evidence, if believed, established familial or financial responsibilities.

{¶32} Further, E.C. testified that during that same time span, she and Dobson had sexual intercourse every day. This testimony, if believed, established consortium. Finally, although Dobson counters that he had moved out of E.C.'s apartment in October 2012, and thus not living with her as contemplated by the statute. E.C. testified that he spent every night at her apartment once their relationship was rekindled after they met again at the funeral.

{¶33} Here, guided by common sense and ordinary human experience, the average person could have concluded from the above evidence that E.C. and Dobson had shared familial and financial responsibilities, and that Dobson was a person living as E.C.'s spouse for purposes of a domestic violence conviction. As such, after viewing the

evidence in a light most favorable to the prosecution, any trier of fact could have found the essential elements of the domestic violence proven beyond a reasonable doubt. Accordingly, we overrule the third assigned error.

{¶34} Judgment affirmed in part, reversed in part, and remanded to the trial court to vacate the rape and kidnapping convictions.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS
IN PART AND DISSENTS IN PART WITH
ATTACHED OPINION

SEAN C. GALLAGHER, P.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶35} I concur with the majority's decision overruling Dobson's third assignment of error, but respectfully dissent from the decision of the majority to reverse Dobson's conviction for the rape and kidnapping counts. After reviewing the evidence in a light

most favorable to the state, a rational finder of fact could have found, and indeed did find, evidence that established the element of force for both the rape and kidnapping counts.

{¶36} There is no dispute that Dobson attacked the victim and then never left her alone long enough for her to safely call for help. As the majority recognized, this is a domestic violence situation where the victim was attacked in her own home and could not safely escape the situation out of fear of reprisal. The victim explained her reason for going out to dinner and watching the movies — to placate Dobson and his anger. She testified to being afraid of Dobson at the time he made sexual advances. She did not physically resist once she exhausted her attempts to avoid the advances as subtly as she could, according to her, to avoid further angering Dobson into another attack. Once she was outside his presence, she reported the incident.

{¶37} "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). The definition is fairly broad, and I cannot say as a matter of law that the facts have not established any evidence of compulsion exerted by any means. The victim testified that she feared Dobson would attack her. When asked why she did not call the police, the victim responded that she wanted to keep herself as safe as possible in light of the fact it was just the two of them in her house. Relying on that evidence, a reasonable trier of fact could have found the element of force was proven beyond a reasonable doubt.

{¶38} For the foregoing reasons, I respectfully dissent from the majority's disposition of Dobson's first and second assignments of error, and I would affirm Dobson's conviction.