KATHLEEN ANN KEOUGH, J.:
{¶ 1} Defendant-appellant Angela Grooms appeals her convictions. For the reasons that follow, we affirm.
{¶ 2} In December 2015, Grooms was named in a two-count indictment charging her with one count each of trafficking in or illegal use of foods stamps and tampering with records. The case proceeded to trial where the jury heard the following evidence.
{¶ 3} On November 7, 2013, Cuyahoga County Job and Family Services ("CCJFS") received a complaint that *603 Grooms may have been receiving food assistance benefits that she was not entitled to receive. Naomi Benson ("Benson") testified that this alert caused her to screen Grooms's file, where she discovered that the addresses listed for Grooms did not match and that Grooms may have earned income that was not reported. Based on a review of the case file, an investigation commenced. According to Benson, an investigation consists of contacting the client's employer and landlord, and confirming rent, utilities, and members of the household. Benson explained that food assistance benefits are determined based on these factors. As a result of the investigation, it was discovered that Grooms received an overpayment in benefits of $10,658 from April 2012 until April 2014.
{¶ 4} Simeon Best, supervisor in the investigation department of CCJFS, testified about the process of receiving assistance benefits. He explained that when a person applies for benefits, the factors considered to determine eligibility are earned and unearned income, employment, residency, household makeup, and cost of living. He explained that these factors are computed into a formula that determines the amount of benefits, if any. After a person is found eligible, the client is then advised about their rights and responsibilities, including their responsibility to timely report any changes of circumstances. Additionally, every six months, the client is required to file an interim report to report any changes to their income, rent, utilities, and household makeup. Finally, a yearly redetermination process occurs where the case worker speaks with the client to verify eligibility and amount of benefits.
{¶ 5} Best testified that in Grooms's case, the investigation began by verifying all the information in the file, including contacting Grooms's employer and landlord. As part of the investigation, they discovered that Grooms was not residing at the address she provided to CCJFS during the period of April 2012 through April 2014. According to the department's records, Grooms reported during that period that she was residing at a Fairhill residence in Shaker Heights and had rent expenses of $760 per month. Based on their investigation, this information was false. Additionally, CCJFS received a September 2014 rent receipt from Gooms for rent for the Fairhill address in the amount of $900. This was also proven to be false. According to Best, Grooms's failure to update her address with CCJFS violated the policies and procedures for receiving benefits. Additionally, the interim report submitted by Grooms during April 2012 to April 2014 where she reported "no change" in her living circumstances was false.
{¶ 6} Sheree Maryash, office manager for L & A Management, which owns the Fairhill property, testified that Grooms lived at the Fairhill address from October 22, 2000 until she was evicted in August 2011 for nonpayment of rent. Grooms's rental obligation was $760 per month. According to Maryash, Grooms vacated the premises on September 26, 2011, but last paid rent in May 2011. Maryash testified that the September 2014 rent receipt presented to CCJFS depicting that Grooms paid $900 in rent for the Fairhill property was not a receipt generated by her or by management.
{¶ 7} Best also testified, over objection, about documents that CCJFS received during the investigation from Grooms's employer, Victor Stewart of Stewart Enterprises. The documents revealed that Grooms was employed by Stewart from October 2012 to August 2013. The documents also disclosed that after Grooms was terminated from Stewart Enterprises, she received unemployment benefits through 2014. Best testified that Grooms *604 did not report either her earned or unearned income to the CCJFS. According to Best, the income would have made her ineligible to receive benefits.
{¶ 8} Best further testified about the procedure the agency followed after it was alerted that Grooms's eligibility may have changed. Once the alert occurs, the agency sends out a letter requesting verification of benefits. If after ten days nothing is received, a second letter is sent. If after 15 days and no response is received, it is the policy to terminate benefits. However, in Grooms's case, the benefits inadvertently continued. Best testified that despite this error, he determined Grooms's continued receipt of benefits was an intentional program violation because Grooms repeatedly failed to update her address, residence, and income. On cross-examination, both Best and Benson admitted that an agency error occurred during this time period. The agency error was the case worker's failure to terminate benefits after Grooms failed to return the verification of benefits inquiry. However, even if an agency error occurs, the client is still responsible for repayment of any overpayment. Benson testified that had the case been properly handled, Grooms would have stopped receiving benefits in March 2013.
{¶ 9} Grooms was found guilty of trafficking in or illegal use of food stamps and tampering with records. The court sentenced her to two years of community control sanctions and ordered her to pay $10,658 in restitution.
{¶ 10} Grooms now appeals, raising three assignments of error.
I. Effective Assistance of Counsel
{¶ 11} In her first assignment of error, Grooms contends her counsel was ineffective for failing to file a pretrial motion to dismiss.
{¶ 12} To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance fell below an objective standard of reasonable representation, and (2) he was prejudiced by that performance. Strickland v. Washington , 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland at 694, 104 S.Ct. 2052.
{¶ 13} In this case, Grooms contends that counsel was ineffective for failing to file a motion to dismiss based on the state's failure to comply with Ohio Adm.Code 5101:4-8-15. Specifically, she contends that because the state did not comply with the time frames specified in the Ohio Administrative Code, the state failed to comply with the statute of limitations pertaining to crimes related to the improper receipt of food stamp benefits. She appears to argue that the Ohio Administrative Code provides the relevant statute of limitations.
{¶ 14} The provisions of the Ohio Administrative Code are not law, but merely supplements to the Revised Code. State v. Cooper , 2016-Ohio-8048, 75 N.E.3d 805, ¶ 47 (8th Dist.), citing N. Ohioans Protecting the Environment v. Shank , 52 Ohio App.3d 41, 43, 557 N.E.2d 126 (10th Dist.1988). Ohio Adm.Code 5101:4-8-15 governs food assistance claims against assistance groups. Grooms contends subsection (L) creates a statute of limitations for crimes related to improper receipt of food stamp benefits. We disagree.
{¶ 15} Ohio Adm.Code 5101:4-8-15(L) sets forth the claim management process and time frames for establishing claims *605 against any assistance group that trafficked benefits or received more food assistance benefits than it was entitled to receive. Accordingly, Ohio Adm.Code 5101:4-8-15 does not apply to criminal investigations; it is applicable to a civil sanction based on defined misappropriation of benefits.
{¶ 16} R.C. 2901.13 is the statutory provision that governs the determination of the statute of limitations for criminal prosecutions. In this case, Grooms was charged with third-degree felony violations of trafficking in or illegal use of food stamps in violation of R.C. 2913.46(B), and tampering with records in violation of R.C. 2913.42(A)(1).
{¶ 17} Pursuant to R.C. 2901.13(A)(1), the relevant statutory period for any felony other than murder is six years. Therefore, the statute of limitations pertaining to crimes related to the improper receipt of food stamp benefits is six years. Because the alleged offenses occurred between April 1, 2012 and April 30, 2014, and the indictment was filed against Grooms on December 10, 2015, the case was brought within the relevant statutory period of six years.
{¶ 18} Accordingly, counsel was not ineffective for failing to file a futile motion to dismiss for a statute of limitations violation because criminal prosecution commenced against Grooms within the relevant statute of limitations period for a third-degree felony. Grooms's first assignment of error is overruled.
II. Hearsay Testimony
{¶ 19} During trial and over objection, the trial court admitted exhibit No. 6, which consisted of various documents provided to CCJFS from Stewart Enterprises, Grooms's employer. The trial court determined that the documents were admissible under the business records exception to the hearsay rule. In her second assignment of error, Grooms contends that the trial court abused its discretion in admitting this prejudicial hearsay testimony.
{¶ 20} A trial court possesses broad discretion regarding the admission of evidence, including the discretion to determine whether evidence constitutes hearsay and whether it is admissible hearsay. State v. Graves , 9th Dist. Lorain No. 08CA009397, 2009-Ohio-1133, 2009 WL 653091, ¶ 4. Abuse of that discretion implies that the court's attitude was unreasonable, arbitrary, and unconscionable. Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).
{¶ 21} In this case, Victor Stewart, the owner of Stewart Enterprises, did not testify, but Best testified regarding the nature and content of exhibit No. 6, which consisted of the Stewart employment records. Included in these records was a letter sent to Grooms from Stewart dated August 31, 2013. The subject of the letter was a "notice of termination." The letter advised Grooms that she was terminated from Stewart Enterprises, the basis why she was terminated, and instructions on returning property belonging to Stewart Enterprises. The exhibit also contained a letter from Stewart to the Ohio Department of Job and Family Services ("ODJFS"), Office of Unemployment Compensation regarding the determination of unemployment benefits. Exhibit No. 6 also contained a letter from Stewart to Michael B. Colbert, the director of ODJFS, requesting that Grooms be investigated for fraud. Attached to the letter was documentation from ODJFS revealing that Grooms was receiving unemployment compensation benefits for August and September 2013 and August and September 2014.
{¶ 22} " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in *606 evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within one of the exceptions listed in Evid.R. 803.
{¶ 23} Evid.R. 803(6) provides the "business records exception" to the hearsay rule and states that the following records are not excluded by the hearsay rule:
memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
This rule allows the admission of business records if they are made in the course of a regularly conducted business activity because the courts presume that such records are trustworthy given the self-interest to be served by the accuracy of such entries. Weis v. Weis , 147 Ohio St. 416, 425-426, 72 N.E.2d 245 (1947).
{¶ 24} To qualify for the business-records exception, a record must meet the following criteria: (1) the record must be one recorded regularly in a regularly conducted activity, (2) a person with knowledge of the act, event, or condition recorded must have made the record, (3) it must have been recorded at or near the time of the act, event, or condition, and (4) the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or some other qualified witness. State v. Davis , 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.
{¶ 25} In this case, the business records at issue are letters and unemployment compensations records from Stewart that were provided to CCJFS. While they may be part of the agency's file, the records themselves are business records of Stewart Enterprises, not CCJFS. Accordingly, absent any testimony from a witness who was the custodian of Stewart's records, or a qualified witness who could attest to the business records of Stewart, the trial court abused its discretion in admitting these records at trial.
{¶ 26} Best's testimony was offered to prove the truth of the matter asserted-that Grooms had been employed with Stewart Enterprises on specific dates. Best, an employee of CCJFS, could testify how the agency obtained the letters, but Best could not testify about their content. He had no personal knowledge regarding (1) whether the document was prepared and maintained in the course of a regularly conducted business activity, and (2) the content of Stewart's letter or the employment records attached thereto. Best is not the custodian of the Stewart exhibit, by his own testimony, and he is also not an "other qualified witness" as provided by Evid.R. 901(B)(10) and could not authenticate the exhibits as a business record of Stewart Enterprises. State v. Hood , 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 40 (a qualified witness is someone with enough familiarity with the record-keeping system of the business to explain how the record came into existence in the ordinary course of business). Best's testimony was only based on a review of Grooms's CCJFS file. "There is no hearsay exception, either in Evid.R. 803 or 804, that allows a witness to give hearsay testimony of the content of business records only upon a review of the records."
*607 St. Paul Fire & Marine Ins. Co. v. Ohio Fast Freight, Inc. , 8 Ohio App.3d 155, 157, 456 N.E.2d 551 (1982), paragraph one of the syllabus. Accordingly, the trial court abused its discretion in admitting the Stewart letters.
{¶ 27} However, pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." To find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt. State v. Lytle , 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). A reviewing court may overlook an error where the remaining admissible evidence, standing alone, constitutes "overwhelming" proof of a defendant's guilt. State v. Williams , 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983). "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." State v. Brown , 65 Ohio St.3d 483, 485, 605 N.E.2d 46 (1992).
{¶ 28} In this case, the jury also heard testimony that Grooms did not update her information with CCJFS regarding her place of residence and rent. Benson and Best both testified that in determining eligibility and computing benefits, multiple factors are considered, including rental obligation and household makeup. Best also testified that failing to report any change in rent or household makeup violates the policies, rules, and reporting responsibilities of which clients are advised at the time benefits are determined. Testimony and evidence was presented that despite being evicted from the Fairhill property in August 2011, Grooms did not update this change with CCJFS. In fact, Grooms continued using the Fairhill address as her place of residence with CCJFS and submitted a falsified receipt claiming that she paid $900 rent for the Fairhill property in 2014. Best testified that based on Grooms's misrepresentations, Grooms received an overpayment of benefits.
{¶ 29} Additionally, other agency exhibits were admitted and not objected to that provided information on Grooms's employment with Stewart Enterprises. Exhibit No. 5, which was the agency's benefit calculation worksheets, contained internal agency notes stating the dates Grooms started working for Stewart Enterprises and the amount of income she was receiving.
{¶ 30} Accordingly, the letters authored by Stewart were inadmissible under the Evid.R. 803(6) as business records. However, the error was harmless because other admissible evidence was presented for the jury to conclude that Grooms did not report income she was receiving from April 2012 until April 2014. Additionally, Grooms's convictions were also based on her failure to notify CCJFS of her change of address, rental obligations and repeated nondisclosure of her change of circumstances.
{¶ 31} Accordingly, Grooms's second assignment of error is overruled.
III. Manifest Weight
{¶ 32} Grooms contends in her third assignment of error that her convictions for trafficking in or illegal use of food stamps and tampering with records were against the manifest weight of the evidence.
{¶ 33} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. State v. Bowden , 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, 2009 WL 2186608, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses *608 and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins , 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." Id.
{¶ 34} In this case, Grooms was charged with trafficking in or illegal use of food stamps in violation of R.C. 2913.46(B), which prohibits a person from "knowingly possessing, buying, selling, using, altering, accepting, or transferring supplemental nutrition assistance program benefits, WIC program benefits, or any electronically transferred benefit in any manner not authorized by the Food and Nutrition Act of 2008 ( 7 U.S.C. 2011 et seq. ) or section 17 of the 'Child Welfare Nutrition Act of 1966,' 80 Stat. 885, 42 U.S.C. 1786, as amended."
{¶ 35} Best testified that Grooms was receiving nutrition assistance program benefits, commonly referred to as "food stamps," through CCJFS. He stated that benefits are determined based on a calculation of earned and unearned income, rent, utilities, and household makeup. According to Best, Grooms's failure to report her income and update her rental obligations caused her to receive an overpayment of $10,658 from April 2012 to April 2014. Grooms indicated on her interim reports during that time frame that "no change" existed, despite testimony and evidence clearly showing that she longer resided at the Fairhill address and that she was receiving either earned or unearned income during that time frame. Her failure to report was a knowing violation of R.C. 2913.46(B), and her conviction was not against the manifest weight of the evidence.
{¶ 36} Additionally, in light of Grooms's failure to update her information with CCJFS, and falsely reporting "no change" on government documents, the jury did not lose its way in finding that Grooms tampered with records in violation of R.C. 2913.42(A)(1). That section provides that "no person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record." The weight of the evidence demonstrated that Grooms acted with purpose to defraud by failing to report the changes in her income and residence, while continuing to receive benefits as originally calculated.
{¶ 37} Accordingly, Grooms's convictions are not against the manifest weight of the evidence. Her third assignment of error is overruled.
{¶ 38} Judgment affirmed.
MARY J. BOYLE, P.J., and PATRICIA ANN BLACKMON, J., CONCUR