[Cite as *State v. Rosa*, 2019-Ohio-4888.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108051 |
| v. | : | |
| EDITO ROSA, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART; AND REMANDED

**RELEASED AND JOURNALIZED:** November 27, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-615294-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kelly N. Mason, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Edito Rosa ("Rosa"), appeals his convictions and sentence. For the reasons that follow, we affirm in part, vacate in part, and remand for a limited resentencing.

{¶ 2} In March 2017, Rosa was named in a fifteen-count indictment charging him with one count of rape, with a notice of prior conviction and a repeat violent offender specification; three counts of kidnapping, with each count containing a notice of prior conviction, repeat violent offender and sexual motivation specifications; three counts of gross sexual imposition; two counts of robbery, with one count containing a notice of prior conviction and a repeat violent offender specification; two counts of aggravated menacing; and one count each of theft, disrupting public services, criminal damaging or endangering, and telecommunications harassment.

{¶ 3} Prior to trial, Rosa executed a jury waiver on the notices of prior conviction and repeat violent offender specifications. All other counts and specifications were tried before a jury, who heard the following evidence.

{¶ 4} Rosa and the victim began dating in January 2017. At the time, the victim was still married and also dating another man. The victim testified that although she told Rosa in February 2017 that she did not want to continue dating him, she agreed to go to his house on March 6, 2017.

{¶ 5} When the victim did not show as planned, Rosa continuously called and texted her until midnight, leaving aggressive messages on her voicemail. She ignored them at first; however, at midnight she received video messages and photographs of her and Rosa hugging and kissing. Rosa told her that he would post the pictures on Facebook, which she perceived to be a threat. The victim stated that she then called Rosa, who told her that if she did not come to his house, he was going

to kill her and her teenage son. The victim told her son about the threatening messages, and then went to Rosa's house.

{¶ 6} The victim testified that when she arrived at his house, Rosa was sitting naked in the recliner and a bottle of beer and cocaine were on the table. The victim testified that she again told Rosa that she did not want to date him anymore. When she attempted to leave, Rosa slapped the victim in the face, pushed her against the television, and told her she was "not going anywhere, you're going to stay here." (Tr. 337.) Eventually the victim convinced Rosa that she needed to go home and get her anxiety medication. According to the victim, Rosa stated that she could go, but that he would drive her home.

{¶ 7} When they got outside, the victim attempted to run away, but Rosa tackled her to the ground. As the victim tried to get up, Rosa pulled her toward the house. The victim testified that she started resisting and struggling to escape because she felt that if she went into the house she would never come out. She stated that Rosa pulled her hair, held her down by placing his knee on her back, and choked her with his arm. She stated that she was able to break free and knock on a neighbor's house, while screaming for "help," and that "he's going to kill me." (Tr. 341.) However, no one responded. According to the victim, Rosa told her "if you don't get your ass in the house, I'm going to knock you the f*** out and drag you in myself." (Tr. 343.) The victim testified that she felt like she was going to die if he got her inside the house, so she tried to hold onto her car to prevent Rosa from getting her inside. However, Rosa banged her head against the car and forced

her inside the house. During this assault, the victim received a call on her cell phone from her then-husband, but Rosa grabbed the phone and smashed it on the driveway.

{¶ 8} The victim testified that she had mud all over her clothing from wrestling with Rosa in the yard and driveway. After Rosa forced her into the house, he pulled her into the bathroom, took off her muddied clothes, and forced her into the shower. He got into the shower with her and touched her breasts, vagina, and buttocks. The victim testified that she did not want him touching her, but did not protest because she thought that if she was compliant, he would not assault her anymore and he would let her go home.

{¶ 9} The victim stated that as she became compliant, Rosa calmed down and, after the shower, Rosa told her to get into the bed with him. The victim testified that she told him whatever she needed to in order to leave the house, including that she would move in with him later that day.

{¶ 10} When her alarm went off at 6:00 a.m. and she started gathering her clothes, Rosa became agitated and told her "no, no, you know what you have to do before you go." (Tr. 351.) According to the victim, she knew that he meant that he wanted sex. The victim told him that she was not feeling well and that they could engage in sexual activity after work; however, Rosa told her that she was "not leaving here until we do it." (Tr. 352.) The victim testified that she then "laid on the bed and I let him do what he had to do." *Id.* She stated that she kept telling

him that her stomach hurt while he was having sex with her. Afterward, Rosa allowed her to leave to go to work.

{¶ 11} The victim left Rosa's house and went straight home where she immediately told her son what had happened, and she used his cell phone to call 911. The victim's 911 recording was played for the jury. The jury heard the victim tell the dispatcher that she was tortured all night, held against her will, and physically assaulted by Rosa. When the dispatcher asked her how she escaped, the victim stated, "I did what he wanted; I pretended everything was okay." The victim was treated and transported by EMS to MetroHealth Hospital where a SANE examination was performed, a rape kit compiled, and photographs were taken of the victim's injuries. The victim also met with Detective Cynthia Adkins and provided a statement.

{¶ 12} In the days following, Rosa attempted to contact the victim. In voicemails and text messages, Rosa apologized for what had occurred and indicated he was sorry for hurting her, blaming his actions on drugs and alcohol. The jury saw social media posts in which Rosa claimed he "messed up." Photographs were displayed showing the victim's injuries, the exterior and interior of Rosa's house, and the muddy clothes that the victim was wearing when the attack occurred.

{¶ 13} The jury found Rosa not guilty of one count of robbery (Count 7) and one count of aggravated menacing (Count 14), but guilty of all the remaining

counts and specifications, and the trial court found him guilty of the notices of prior conviction and repeat violent offender specifications.

{¶ 14} Prior to sentencing, the trial court determined that Count 1, rape, and Count 2, kidnapping, merged for sentencing, with the state electing to sentence Rosa on the rape offense. The court also determined that the gross sexual imposition offense charged in Count 5 and the kidnapping offense charged in Count 6, merged for sentencing, with the state electing to sentence Rosa on the gross sexual imposition offense. The trial court imposed a total sentence of eight years in prison. Rosa now appeals, raising four assignments of error for our review.

## I. Sufficiency of the Evidence

{¶ 15} In his first assignment of error, Rosa contends that his convictions for rape set forth in Count 1, and kidnapping as charged in Count 2, were based on insufficient evidence in derogation of his right to due process of law under the Fourteenth Amendment to the United States Constitution.

{¶ 16} A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 17} Rosa was convicted of rape, in violation of R.C. 2907.02(A)(2). It provides that no person shall engage in sexual conduct with another by purposely compelling the other to submit by force or threat of force. In this case, Rosa was charged with purposely compelling the victim to engage in vaginal intercourse.

{¶ 18} Pursuant to R.C. 2901.01(A), "force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." A defendant purposely compels his victim to submit by force or threat of force when he uses physical force against the victim, or creates the belief that physical force will be used if the victim does not submit. *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), paragraph one of the syllabus. Force need not be overt and physically brutal, it can be subtle and psychological. *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985). The element of force can be inferred from the circumstances surrounding the sexual conduct and is established if it is shown that the victim's will was overcome by fear or duress. *State v. Smelcer*, 89 Ohio App.3d 115, 126, 623 N.E.2d 1219 (8th Dist.1993).

{¶ 19} Rosa contends that no evidence was presented that he purposely compelled the victim to submit by force or threat of force to engage in sexual

conduct. In support, Rosa cites to this court's decision of *State v. Dobson,* 8th Dist. Cuyahoga No. 100418, 2014-Ohio-3710. In *Dobson*, the victim testified that although she did not want to have sex with Dobson, she did not protest. Additionally, the victim did not testify that she believed Dobson would use force against her if she did not submit to sexual conduct. The majority decision found that no evidence was presented that the earlier assault caused the victim to be overcome by fear or duress. Accordingly, the *Dobson* majority court concluded that the state failed to present sufficient evidence to prove that Dobson purposely compelled the victim to submit by force or threat of force — "when the state fails to prove purposeful force or threat of force, as a matter of law, the case for rape falls under the sufficiency standard of proof." *Id.* at ¶ 20.

{¶ 20} Although the facts in this case are similar to those in *Dobson*, we find that sufficient evidence was presented in this case that the victim's will was overcome by fear or duress such that a rational trier of fact could infer the element of force based on the totality of the circumstances and the violence the victim endured earlier that morning.

{¶ 21} The jury heard the victim testify that she went to Rosa's home that night because he told her that if she did not come over, he was going to kill her and her son. The first time she attempted to leave his house, Rosa slapped her in the face, pushed her, and told her that she was "not going anywhere; you are going to stay here." While appellant was assaulting and choking the victim outside the house, he told her "if you don't get your ass in the house I'm going to knock you the

f*** out and drag you in myself." The victim testified that she thought she was going to die if he got her back into the house.

{¶ 22} The victim also testified that once Rosa forced her back into the house, he made her shower. She stated that during that time, she was trying to figure out how she would get out of the house. She thought that Rosa might let her go if she was compliant and did what he said. However, when she tried to leave in the morning, Rosa became agitated and told her that she had to have sex with him before she could leave. Although she told him that she did not feel well, he said that she was not leaving until they had sex. The victim stated she "let him do what he had to do." It is clear from the victim's testimony, Rosa's actions, and the evidence in this case that the victim submitted to the sexual conduct because she believed that was her only means to escape him and any additional acts of violence.

{¶ 23} Additionally, the jury heard threatening voicemails and video message recordings from Rosa to the victim. In one recording, Rosa told the victim that she would not be "turning [him] f****** down anymore." Importantly, the night before the attack, Rosa threatened the victim that he would post photographs and videos on social media if she did not return his calls.

{¶ 24} The jury also heard the victim's 911 call that she made when she arrived home immediately following her escape in which she told the dispatcher that she was "tortured all night long" and that Rosa had hit her. When the dispatcher asked her how she escaped, the victim stated that she "did what he

wanted" and that she "pretended everything was okay." She stated that he choked and beat her, and that she was scared.

{¶ 25} From the victim's testimony and statements made immediately following the attack, the totality of the circumstances reveal that the victim's will was overcome by fear or duress; thus, the element of force or threat of force can be inferred. It is clear that the victim was acting in self-preservation by acquiescing to Rosa's demands. Her testimony allowed a reasonable jury to conclude that she acted only to diffuse the situation so that she could escape, especially because prior attempts to escape were unsuccessful and she was assaulted during those attempts.

{¶ 26} Accordingly, viewing the evidence in the light most favorable to the state, sufficient evidence was presented to prove the elements of rape — that Rosa purposely compelled the victim to engage in sexual conduct by force or threat of force. [1] The assignment of error is overruled.

## II. Admission of Evidence

{¶ 27} Cleveland EMS Paramedic, Paolo Tatangelo, testified about the statement the victim made during treatment. Over objection, the state asked Tatangelo to read the victim's statement:

---

[1] We need not address the finding of guilt as to the kidnapping charge in Count 2 because that offense merged with the rape offense in Count 1, and the state elected that Rosa be sentenced on Count 1. *See State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14 (when counts in an indictment are allied offenses and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the reviewing court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless); *State v. Rucker*, 2018-Ohio-1832, 113 N.E.3d 81, ¶ 35 (8th Dist.).

> She stated that she was involved in a physical altercation with Mr. Rosa. She stated that Mr. Rosa attacked her in his driveway. She was punched several times and choked on top of her car. She was then forced inside his home. Patient also stated she was covered in mud and he made her take a shower with him. Around 5:00 a.m., in fear of her life, she was forced to have sex with him. After sex, the patient made an agreement to move in with him. He then allowed her to leave the home. The patient states she drove to her home, where she called 911.

(Tr. 577.)

{¶ 28} Rosa contends in his second assignment of error that the trial court erred in admitting into evidence the narrative given by the victim to the Emergency Medical Service technicians. Specifically, Rosa takes issue with the portion of the victim's statement where she stated, "[a]round 5:00 a.m., in fear of her life, [the victim] was forced to have sex with [Rosa]." He contends that the victim's statement was impermissible pursuant to Evid.R. 803(4) because it did not aid in providing medical care and treatment, but only served to aid in prosecution. Rosa further maintains that if the admission was in error, it was not harmless because the victim's statement went to the very issue at trial — his purposeful intent to force the victim to engage in sexual conduct.

{¶ 29} "A trial court possesses broad discretion regarding the admission of evidence, including the discretion to determine whether evidence constitutes hearsay and whether it is admissible hearsay." *State v. Grooms*, 2018-Ohio-1093, 109 N.E.3d 600, ¶ 20 (8th Dist.), citing *State v. Graves*, 9th Dist. Lorain No. 08CA009397, 2009-Ohio-1133, ¶ 4. Abuse of that discretion implies that the

court's attitude was unreasonable, arbitrary, and unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 30} Statements made for the purposes of medical diagnosis and treatment are a clearly defined, long-standing exception to the rules of hearsay. Evid.R. 803(4) provides an exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Further, in considering cases of sexual assault, "courts have consistently found that a description of the encounter and identification of the perpetrator are within the scope of statements for medical treatment and diagnosis." *In re D.L.*, 8th Dist. Cuyahoga No. 84643, 2005-Ohio-2320, ¶ 21, citing *State v. Stahl*, 9th Dist. Summit No. 22261, 2005-Ohio-1137, ¶ 15. However, not every statement made by a declarant in aid of treatment is admissible under the rule: "The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted." Staff Note to Evid.R. 803(4); *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, ¶ 28.

{¶ 31} In this case, when viewing the entirety of the victim's statement, we find it was admissible pursuant to Evid.R. 803(4) because it was made in aid of medical diagnosis and treatment. The victim's statement allowed medical personnel to understand where injury, if at all, might be present, or explain why

no injury was visible. We find no abuse of discretion by the trial court in admitting this testimony.

{¶ 32} Even if portions of the victim's statement were inadmissible, the error was harmless. An error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction. *State v. DeMarco*, 31 Ohio St.3d 191, 195, 509 N.E.2d 1256 (1987). Moreover, a defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt and the outcome of the case would have been the same regardless of evidence admitted erroneously. *State v. Williams*, 38 Ohio St.3d 346, 528 N.E.2d 910 (1988); Crim.R. 52(A).

{¶ 33} Here, the jury heard the victim's 911 call in which she stated she escaped by doing "what he wanted." As previously explained in addressing Rosa's first assignment of error, the jury could reasonably find that Rosa forced the victim to submit to sexual conduct. The jury did not have to rely solely on the victim's statement to medical personnel that she succumbed to Rosa's demands "out of fear for her life" to determine that the victim was fearful or was forced to engage in sexual conduct to find Rosa guilty of rape. Accordingly, Rosa's second assignment of error is overruled.

## III. Admission of Evidence — Rosa's Silence

{¶ 34} Detective Adkins testified that on March 9, 2017, she executed a search warrant for Rosa's home and an arrest warrant for Rosa. (Tr. 610.) He was

present at his home at the time the warrants were executed, and was taken into custody. Detective Adkins testified about the search and the items taken from Rosa's home. When asked what she did "in [her] investigation" following the execution of the search warrant, Detective Adkins responded that she "attempted to speak with Mr. Rosa" but that he did not wish to give a statement or talk to her. (Tr. 615.) No other testimony was elicited about Rosa's refusal to talk with police; rather, Detective Adkins continued to testify about her investigation of Rosa's cell phones and content obtained from them.

{¶ 35} In his third assignment of error, Rosa contends that the trial court erred in admitting Detective Adkins testimony that Rosa declined to make a statement to police because it violated his right to due process by impermissibly commenting on his post-arrest silence. Because no objection was raised, we review for plain error. "Plain error occurs when the error is an obvious error that affects a substantial right and 'but for the error, the outcome of the trial clearly would have been otherwise.'" *State v. Tufts*, 8th Dist. Cuyahoga No. 94276, 2011-Ohio-73, ¶ 15, quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978); Crim.R. 52(B). Courts are to notice plain error "'with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240, quoting *Long* at *id.*

{¶ 36} In support of his argument, Rosa cites to *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In *Doyle*, the defendants were given *Miranda* warnings after they were arrested. During trial, each defendant testified and gave

an exculpatory story that they had not previously told to the police or the prosecutor. Over their counsel's objection, they were cross-examined as to why they had not given the arresting officer the exculpatory explanations. The Supreme Court reversed the defendants' convictions, holding that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 619. In this case, because Rosa did not testify, *Doyle's* prohibition of direct impeachment with post-arrest silence does not apply.

{¶ 37} However, a *Doyle* violation can also occur when the state uses other witness testimony about a defendant's silence as implicit evidence or inference of a defendant's guilt. *See, e.g., State v. Froe*, 4th Dist. Scioto No. 02CA2860, 2003-Ohio-7334 (prosecutor can implicitly imply the defendant's silence is evidence of guilt through police testimony about the defendant invoking his right to remain silent or to consult an attorney); *State v. Jones*, 1st Dist. Hamilton No. C-970043, 1998 Ohio App. LEXIS 3938 (Aug. 28, 1998). "[T]he test under *Doyle* is to determine whether the prosecutor's comment was extensive — 'whether an inference of guilt from silence is stressed to the jury * * *' as a basis of conviction." *State v. Lanier*, 6th Dist. Ottawa No. OT-95-051, 1996 Ohio App. LEXIS 3286, 11 (Aug. 2, 1996), quoting *United States v. Newman*, 943 F.2d 1155, 1158 (9th Cir.1991).

{¶ 38} Applying the *Doyle* test, we find that Detective Adkins's single comment about Rosa's silence was not extensive that an inference of guilt was

stressed to the jury and used as a basis for conviction. Rather, we find that this comment was more akin to a response about the detective's course of investigation.

{¶ 39} In *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, the Ohio Supreme Court held that use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment, and that the use of a defendant's post-arrest, post-*Miranda* invocation of his right to counsel as substantive evidence of guilt violates the Fourteenth Amendment. The court specifically noted, however, that "[the investigating officer's] testimony that he had made an appointment to meet with [the defendant] to discuss the case but that the appointment was not kept is [a] legitimate [governmental practice]" because the testimony qualified as evidence of the "course of investigation." *Id.* at ¶ 32, citing *Combs v. Coyle*, 205 F.3d 269 (6th Cir.2000).

{¶ 40} Much like in *Leach*, Rosa did not testify at his trial, so evidence of his post-arrest silence was not used to impeach his testimony. However, unlike in *Leach*, Detective Adkins's testimony of Rosa's decision not to give a statement was not elicited as substantive evidence of Rosa's guilt; rather, it was a single comment simply mentioned in the context of Detective Adkins's description of her course of investigation. The state did not rely on this evidence during its closing to support its allegations of guilt or rely on it at any other time. Accordingly, Detective Adkins's testimony did not violate Rosa's due process rights. *See, e.g., State v. Rahman*, 23 Ohio St.3d 146, 153, 492 N.E.2d 401 (1986) (single comment on defendant's post-

arrest silence does not reach the serious constitutional impairment of the repeated references to such silence as recognized in *Doyle*).

{¶ 41} Additionally, the jury heard directly from Rosa through the recorded messages that he left on the victim's voicemail and on social media posts. In the recorded messages that Rosa left after the attack, he repeatedly stated that he was sorry for hurting the victim, hoped she was okay, and that he "messed up." He also stated that his actions were "out of place," blaming his behavior on alcohol and "perico," which is slang for cocaine. Based on these admissions and statements, any testimony that he would not talk to the police was not prejudicial and does not rise to the level of plain error such that a manifest injustice occurred that affected the outcome of the trial. Rosa's third assignment of error is overruled.

## IV. Sentencing

{¶ 42} Rosa contends in his fourth assignment of error that the trial court erred by imposing a six-year prison sentence on a fourth-degree felony. The state concedes the error. Accordingly, Rosa's sentence on this count is vacated and the case is remanded to the trial court to impose a permissible sentence on Count 5, gross sexual imposition, a fourth-degree felony. The assignment of error is sustained.

{¶ 43} Although the issue is not raised as an assignment of error, Rosa notes that the trial court improperly imposed a sentence on the kidnapping charge in Count 2 because that count merged with Count 1, rape. Rosa is correct. A review of the sentencing transcript reveals that the trial court found that Counts 1 and 2

merged for sentencing, with the state electing to proceed with sentencing on Count 1. (Tr. 810-811.) However, the sentencing journal entry shows that the trial court improperly imposed an 18-month sentence on Count 2. This error can be corrected nunc pro tunc to accurately reflect that the two counts merged for sentencing and the trial court imposed sentence on Count 1.

{¶ 44} Additionally, although not raised by either party, this court finds that the trial court failed to journalize its finding of guilt on the notice of prior conviction and repeat violent offender specifications attendant to Counts 6, 7, and 15. Again, this error can be corrected nunc pro tunc to accurately reflect that the trial court stated on the record that it found that "those two requirements or specifications have been met." (Tr. 809-810.) Additionally, the sentencing journal entry can be corrected nunc pro tunc to accurately reflect the court's verdict on the specifications in Counts 1, 2, 6, 7, and 15.

## V. Conclusion

{¶ 45} Judgment affirmed in part; vacated in part; and remanded to the trial court for the limited purposes of (1) vacating the sentence imposed on Count 2; (2) resentencing on Count 5; and (3) the issuance of nunc pro tunc, new journal entries of conviction and sentence, reflecting that the court found Rosa guilty of all the notices of prior conviction and repeat violent offender specifications as charged in Counts 1, 2, 6, 7, and 15; and (4) the issuance of nunc pro tunc, a new sentencing journal entry reflecting that Counts 1 and 2 merged for sentencing.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending is terminated. Case remanded to the trial court for a limited resentencing, issuance of nunc pro tunc journal entries, and execution of the surviving sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

PATRICIA ANN BLACKMON, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR