[Cite as *State v. Cooper*, 2020-Ohio-4293.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108923 |
| v. | : | |
| JAVON COOPER, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 3, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-634474-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jillian J. Piteo, Assistant Prosecuting Attorney, *for appellee.*

Jonathan N. Garver, *for appellant.*

PATRICIA ANN BLACKMON, J.:

{¶ 1} Defendant-appellant Javon Cooper appeals from his convictions for attempted murder and felonious assault. He assigns the following errors for our review:

I. The trial court committed prejudicial error and violated [Cooper's] constitutional rights by allowing the prosecuting attorney, over objection, to introduce evidence of [Cooper's] post-arrest silence.

II. The trial court committed structural error and plain error and denied [Cooper] a fair trial and due process of law by using leading questions to elicit prejudicial testimony from the victim.

III. The trial court committed prejudicial error by allowing the prosecuting attorney, over objection, to elicit irrelevant and inflammatory prejudicial evidence.

IV. [Cooper's] convictions and sentences are against the manifest weight of the evidence.

V. The trial court committed plain error, invaded the province of the jury, and denied [Cooper] due process of law by instructing the jury that a gun is, "of course" a "device or thing designed or especially adapted for use as a weapon," when that was an issue to be decided by the jury.

VI. [Cooper's] sentence should be reversed because it was based, at least in part, upon unsubstantiated rumors of post-verdict intimidation of the victim by named and unnamed persons allegedly associated with [Cooper].

{¶ 2} Having reviewed the record and the caselaw, we affirm the decision of the trial court.

{¶ 3} Cooper was indicted in connection with the 2018 shooting of Antonio Palmer ("Palmer"). Cooper was charged with attempted murder and two counts of felonious assault, all with one-year and three-year firearm specifications. The matter proceeded to a jury trial in June 2019.

{¶ 4} Palmer testified that on August 30, 2018, his thirtieth birthday, he was riding a bicycle on the playground at Willow Elementary School in Cleveland. While talking on the phone with his brother, Palmer noticed Cooper's car, a black

BMW vehicle with Arizona license plates. According to Palmer, Cooper got out of his vehicle and fired three or four shots at him, striking him in the arm and leg. Palmer required multiple surgeries and spent four weeks in the hospital.

{¶ 5} Initially, Palmer told police that he did not know the identity of his assailant. He was presented with a photo array containing Cooper's photograph but did not identify him as the assailant. Palmer stated that he "was just going to let it be," and did not want to be a snitch. Several months later, Palmer told police that "Coop" shot him, and picked defendant out of a photo lineup. He explained that he now believed that Cooper could do it to "somebody else," if he was not apprehended. Palmer testified that during the shooting, he had a clear look at his assailant's face and recognized him as his girlfriend's cousin. Palmer also recognized Cooper's vehicle.

{¶ 6} Palmer did not provide the police with a possible reason for the attack. However, at trial he stated that his girlfriend's mother has mental health issues, and that she had argued with him shortly before the shooting. During this argument, she stated that he "hoped to see" his thirtieth birthday.

{¶ 7} On cross-examination, Palmer was questioned about information in the initial police report that indicated the assailant was driving a black BMW with Georgia license plates. Palmer also acknowledged that he and Cooper had never previously spoken to one another, and that in 2015 he was also shot while at Willow Elementary School. Palmer opined that the earlier shooting was related to an

incident involving his brother, but he did not see the 2015 assailant. Palmer denied gang involvement.

{¶ 8} After obtaining questions from the jurors, the court also questioned Palmer. During this questioning, the court asked whether, in contrast to Palmer's testimony that he is concerned that Cooper may shoot someone else, Palmer is concerned that Cooper may shoot him again. Palmer replied that he is concerned about this, but he "would be good" if Cooper is "put away."

{¶ 9} Douglas Mayne ("Mayne") testified that he lived near Willow Elementary playground. While getting his mail on the day of the shooting, he observed kids on the playground. A midsized black car approached that area. Mayne observed "muzzle flash" from inside the car and heard gunshots. Mayne watched the black car fleeing the area, and he identified Cooper as the driver and the assailant.

{¶ 10} Neighbor Cody Pawelecki ("Pawelecki") testified that he heard gunshots and saw Palmer on the ground. He drove over to the playground and transported Palmer to MetroHealth Hospital. According to Palmer's physician, Dr. Levon Khojayan, Palmer arrived at the hospital with life-threatening injuries. Palmer underwent immediate surgery to save his life, but he remained in peril of losing his leg. Palmer had additional wounds in his arm.

{¶ 11} Cleveland Police Officer Michael Castiglione ("Officer Castiglione") testified that he responded to the scene but learned that the shooting victim had been transported away. He located shell casings, and blood evidence.

**{¶ 12}** Cleveland Police Detective James Crivel ("Det. Crivel") testified that officers received information regarding a black BMW with out-of-state license plates. Recalling that he had previously run the plates of a vehicle with this description, Det. Crivel retrieved the prior LEADS report. The earlier information identified Cooper as the owner of the vehicle. Det. Crivel, accompanied by Cleveland Police Detective Andrew Hayduk ("Det. Hayduk"), subsequently conducted a brief search of Cooper's residence. They did not locate a weapon.

**{¶ 13}** Det. Hayduk also spoke with Palmer at the hospital. Palmer reported that the assailant was a light complected African-American with a beard. According to Det. Hayduk, Palmer stated that the assailant was driving a black BMW with out-of-state plates, possibly from Georgia. Officers administered a photo array to Palmer that contained Cooper's photo, but Palmer failed to identify anyone.

**{¶ 14}** Det. Hayduk also spoke with Mayne. In this meeting, Mayne identified Cooper from a photo array. Det. Hayduk subsequently obtained a search warrant for Cooper's car. Among the items located inside the car was a holster for a handgun.

**{¶ 15}** Cleveland Police Detective Michael Cozart ("Det. Cozart") testified that on November 29, 2018, he presented Palmer with a "six-pack" photo array and Palmer immediately identified Cooper as his assailant. Det. Cozart did not know, however, that Palmer failed to identify Cooper during the earlier photo array and did not know whether Palmer discussed the shooting with others prior to identifying Cooper.

{¶ 16} Cooper was convicted of all charges and specifications. The trial court determined that the offenses were all allied offenses of similar import and merged them for purposes of sentencing. The state elected to proceed to sentencing on attempted murder, and the court sentenced Cooper to an eight-year term, and a three-year term for the firearm specification.

## Postarrest Silence

{¶ 17} In the first assigned error, Cooper argues that the trial court erred in permitting introduction of evidence that police met with him, but he did not give a statement.

{¶ 18} The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." *See also State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 11. "The Fifth Amendment guarantees a criminal defendant's right against self-incrimination, which includes the right to silence during police interrogation." *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "Once a person invokes his or her Fifth Amendment right to remain silent, the State cannot use the person's silence [either in prearrest or postarrest circumstances] as substantive evidence of guilt in its case-in-chief." *State v. Bennett,* 9th Dist. Lorain No. 12CA010286, 2014-Ohio-160, ¶ 63, citing *Wainwright v. Greenfield*, 474 U.S. 284, 298-299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). *See also Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) ("the use for impeachment

purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment.").

{¶ 19} Further, as this court recently noted in *State v. Rosa*, 8th Dist. Cuyahoga No. 108051, 2019-Ohio-4888:

> [A] *Doyle* violation can also occur when the state uses other witness testimony about a defendant's silence as implicit evidence or inference of a defendant's guilt. *See, e.g., State v. Froe*, 4th Dist. Scioto No. 02CA2860, 2003-Ohio-7334 (prosecutor can implicitly imply the defendant's silence is evidence of guilt through police testimony about the defendant invoking his right to remain silent or to consult an attorney); *State v. Jones*, 1st Dist. Hamilton No. C-970043, 1998 Ohio App. LEXIS 3938 (Aug. 28, 1998). "[T]he test under *Doyle* is to determine whether the prosecutor's comment was extensive — 'whether an inference of guilt from silence is stressed to the jury * * *' as a basis of conviction." *State v. Lanier*, 6th Dist. Ottawa No. OT-95-051, 1996 Ohio App. LEXIS 3286, 11 (Aug. 2, 1996), quoting *United States v. Newman*, 943 F.2d 1155, 1158 (9th Cir.1991). * * *
>
> In *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, the Ohio Supreme Court held that use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment, and that the use of a defendant's post-arrest, post-*Miranda* invocation of his right to counsel as substantive evidence of guilt violates the Fourteenth Amendment. The court specifically noted, however, that "[the investigating officer's] testimony that he had made an appointment to meet with [the defendant] to discuss the case but that the appointment was not kept is [a] legitimate [governmental practice]" because the testimony qualified as evidence of the "course of investigation." *Id.* at ¶ 32, citing *Combs v. Coyle*, 205 F.3d 269 (6th Cir.2000).

*Id.* at ¶ 37, 39.

{¶ 20} The *Rosa* court concluded that a detective's "single comment about Rosa's silence was not extensive that an inference of guilt was stressed to the jury

and used as a basis for conviction. Rather, * * * this comment was more akin to a response about the detective's course of investigation." *Id.* at ¶ 38.

{¶ 21} Here, the challenged testimony is as follows:

Q.    Did you attempt to make contact with the defendant in this case?

A.    Yes. I sent notifications to the Fugitives Unit to attempt to try to locate him, and I believe in November they were able to, and while he was at the county jail, I did attempt to interview him at the jail.

Q.    Okay. And were you able to or did you interview him?

[Defense counsel]:  Objection.

THE COURT: Well, this is probably objectionable, but I'm not sure why you started this in the first place if it is.  So let me hear the answer to this question: Did you interview him?

THE WITNESS:  Yes.

THE COURT:  Next question.

Q.  And was any statement given?

A.  No.

{¶ 22} Analyzing this remark and the entire record in this matter, we recognize that the comment at issue was more than the issue contemplated in *Leach.* That is, the challenged testimony constitutes more than merely outlining that the detective made an appointment with Cooper that was not kept.  However, in *Leach*, the impermissible evidence further indicated that the defendant said that he was not keeping the interview appointment because he wanted to speak with an attorney. *Id.* at ¶ 5.  The state used this evidence as substantive evidence of guilt.  *Id.* at ¶ 29-30.  In this matter, however, no further information as to the reason for the lack of

a statement was elicited. Therefore, we find this matter analogous to *Rosa* in that it was a detective's "single comment" about Cooper's silence, rather than evidence offered as substantive evidence of Cooper's guilt. Moreover, the remark was not so extensive that an inference of guilt was stressed to the jury or used as a basis for conviction. Rather, we find that this comment can properly be read as a remark about the detective's course of investigation, and not evidence offered as substantive evidence of guilt.

{¶ 23} Accordingly, we conclude that this assigned error is without merit.

## Court's Leading Questions

{¶ 24} In the second assigned error, Cooper argues that the trial court erred and became "an advocate" when it questioned Palmer using leading questions that elicited that he is fearful of further harm from Cooper but "would be good" if Cooper is "put away."

{¶ 25} We review the court's questioning for an abuse of discretion. *State v. Skerkavich*, 8th Dist. Cuyahoga No. 105455, 2019-Ohio-4973, ¶ 14.

{¶ 26} As to the substantive law, the *Skerkavich* court explained:

> With regard to the trial court's questioning of witnesses, a trial court, in either a bench trial or a jury trial and in accordance with Evid.R. 614(B), "may interrogate witnesses, in an impartial manner, whether called by itself or by a party." Evid.R. 614(B). "This rule exists because the trial court has an 'obligation to control proceedings, to clarify ambiguities, and to take steps to insure substantial justice.'" *State v. Stadmire*, 8th Dist. Cuyahoga No. 81188, 2003-Ohio-873, ¶ 26, quoting *State v. Kay*, 12 Ohio App.2d 38, 49, 230 N.E.2d 652 (8th Dist.1967). Furthermore, and pursuant to Evid.R. 611(A), the trial court has discretion to control the flow of the trial. "This control includes

asking questions of the participants and the witnesses in a search for truth.'" *State v. Redon*, 8th Dist. Cuyahoga No. 92611, 2009-Ohio-5966, ¶ 8, quoting *State v. Prokos*, 91 Ohio App.3d 39, 44, 631 N.E.2d 684 (4th Dist.1993), citing Evid.R. 614.

A trial court's powers pursuant to Evid.R. 611 and 614 are within its discretion.  * * *

"'A judge abuses his [or her] discretion when he [or she] plays the part of an advocate, but the rule is not so restrictive that [a] judge is not permitted to participate in a search for the truth.'" *Redon* at ¶ 11, quoting *State v. Kight*, 4th Dist. Jackson No. 682, 1992 Ohio App. LEXIS 4727 (Sept. 9, 1992).  In this way, a trial court "may interrogate witnesses, in an impartial manner, whether called by itself or by a party."  Evid.R. 614(B).  Absent "'any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth.'"  *State v. Baston*, 85 Ohio St.3d 418, 426, 1999-Ohio 280, 709 N.E.2d 128 (1999), quoting *Jenkins v. Clark,* 7 Ohio App.3d 93, 98, 7 Ohio B. 124, 454 N.E.2d 541 (2d Dist.1992).

However, "there are strict limits placed on the propriety of judicial questions of witnesses, lest the court by its inquiries give the appearance of favoring one side or the other."  *Harper v. Roberts*, 173 Ohio App. 3d 560, 2007-Ohio-5726, 879 N.E.2d 264, ¶ 7 (8th Dist.). With regard to a bench trial, "the court is 'accorded greater flexibility in questioning witnesses * * * [because] when there is no jury, there is no one to be prejudicially influenced by the judge's demeanor.'" *Sheflyand v. Schepis*, 8th Dist. Cuyahoga Nos. 95665 and 95667, 2011-Ohio-2040, ¶ 35, quoting *Mentor v. Brancatelli*, 11th Dist. Lake No. 97-L-011, 1997 Ohio App. LEXIS 5439, 10 (Dec. 5, 1997).

*Id.* at ¶ 13-16.

{¶ 27} In *Skerkavich*, this court determined that the trial court exceeded its permissible questioning where its questions greatly exceeded the questions asked by the prosecuting attorney and defense counsel, and the court's questions

demonstrated bias and prejudice. *Id.* at ¶ 25. This court ruled that the trial court did not merely attempt to ascertain a material fact or attempt to develop the truth, but instead abandoned its duty as an impartial factfinder. Based upon the extent and tone of the questions, this court concluded that "[t]he trial court was in no way attempting to clear up inconsistencies, contradictions, or ambiguities. Instead, the trial court took the stance of a biased advocate on the side of the prosecution." *Id.* at ¶ 23.

{¶ 28} Here, Cooper takes issue with these questions:

THE COURT: Are you also concerned he'll do it to you again?

THE WITNESS: No. I said he'll do it to me so he'll do it to someone else.

THE COURT: I understood your answer, but are you also concerned that he might shoot you?

THE WITNESS: Oh, yes.

THE COURT: What about having that concern now that you're testifying?

(Tr. 241)

{¶ 29} Considering the questioning, we do not find that the trial court abused its discretion. Unlike the questioning condemned in *Skerkavich*, the court's questions were prompted by juror questions and were very brief. Examining the volume, content, and tone, we find no demonstration of bias or prejudice. Rather, we conclude that the questions were posed to ascertain Palmer's reasons for naming Cooper as his assailant despite his initial failure to identify him. The court's

questions were a clear attempt to develop the truth, and to ascertain the material facts.

{¶ 30} This assigned error is without merit.

## Prejudicial Evidence

{¶ 31} In the third assignment error, Cooper argues that the trial court erred and violated Evid.R. 402 and 403 in admitting evidence of Palmer's fear of Cooper after the shooting.

{¶ 32} The admission of evidence "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62. This court's review is limited to determining whether the trial court's evidentiary rulings were unreasonable, arbitrary, or unconscionable. *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002-Ohio-68, 759 N.E.2d 1240.

{¶ 33} "All relevant evidence is admissible, except as otherwise provided by [federal and state law.]" Evid.R. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. But it is "not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). Relevant evidence "may be excluded if its

probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." Evid.R. 403(B).

{¶ 34} In this case, Cooper complains that the trial court erred in admitting testimony that Palmer is afraid of Cooper due to the shooting. However, we find no abuse of discretion. Palmer initially testified that he refused to cooperate with the police in prosecuting the assailant and decided to leave it "in the street." When Palmer later changed his mind, he stated that he was afraid Cooper would shoot someone else, and the court inquired as to whether Palmer was concerned for his own safety. This question was probative of Palmer's truthfulness in identifying Cooper as the assailant, and it tested Palmer's consistency in believing that Cooper is dangerous. Moreover, the question simply raises the commonsense concern as to whether the victim of a claimed assailant is fearful. There is nothing out of the ordinary about the question or the answer.

{¶ 35} This assigned error lacks merit.

## Manifest Weight of the Evidence

{¶ 36} In the fourth assigned error, Cooper argues that his convictions are against the manifest weight of the evidence because of Palmer's failure to identify him from a photo array, his subsequent claim that the assailant was Cooper, someone he knew, and whose car he had seen before. Cooper also notes that during trial, Palmer theorized that the shooting related to an issue with his girlfriend's mother, and, he argues, this claim was not sufficiently investigated. Likewise, Cooper complains that the investigation failed to discount the possibility that the

shooting was caused by gang members who had previous interactions with Palmer's brother.

{¶ 37} "[W]eight of the evidence involves the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Weight of the evidence concerns "the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 38} Furthermore, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). The fact-finder "is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

{¶ 39} Upon review, we cannot say that the jury lost its way and created a manifest miscarriage of justice by convicting Cooper of the offenses. We recognize that Palmer initially told the police that he did not know his assailant; he stated that the shooter was driving a black BMW with out-of-state license plates. He did not identify Cooper from a photo array. However, months later, Palmer clearly identified Cooper and stated that he knew him, and that Cooper is his girlfriend's cousin. Although Mayne's testimony differed from Palmer's as to whether the shooter was inside or out of the car during the shooting, Mayne also stated that a dark car was involved, and he identified Cooper as the assailant. The jury was free to resolve the inconsistencies, and the basic evidence presented linked Cooper and his car to the shooting. The convictions for attempted murder and felonious assault with firearm specifications are not against the manifest weight of the evidence.

**Instruction as to firearm**

{¶ 40} In the fifth assigned error, Cooper argues that the trial court erred in instructing the jury that a "deadly weapon * * * candidly includes a gun, of course." He complains that this remark was tantamount to an instruction to the jury that it must find that a deadly weapon was used during the offenses.

{¶ 41} Here, the indictment charged Cooper with felonious assault in violation of R.C. 2903.11(A)(2), setting forth that Cooper "did knowingly cause or attempt to cause physical harm to John Doe by means of deadly weapon or dangerous ordnance, to wit: handgun." The jury instructions defined a "deadly weapon" as:

A deadly weapon is any instrument, device, or thing that has two characteristics. The first is that it is capable of inflicting or causing death. The second is in the alternative; either the instrument, device or thing was designed or especially adapted for use as a weapon and that candidly includes a gun, of course, or the thing was possessed, carried or used in this case as a weapon. These, of course, are questions of fact for you to decide.

I will tell you that I take no position on what the facts are or aren't here, but you have heard evidence that Palmer was shot with a gun. These instructions are meant to cover all possibilities. So some cases the person might be hit with a bat and there's a question of is that a deadly weapon. If some of this verbiage seems excessive, that's the reason for that.

(Tr. 497.)

{¶ 42} As an initial matter, we note that it is not appropriate to use the term "of course" when instructing a jury as to what they alone must find. In determining whether prejudicial error occurred herein, we recognize that R.C. 2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." *See also* Committee Comment to R.C. 2923.11(A) which specifically includes, as examples of a "deadly weapon" "such as a gun, knife, billy, or brass knuckles[.]" Further, this court has determined that a gun is "capable of inflicting death," as set forth in R.C. 2923.11(A). *State v. Strowder*, 8th Dist. Cuyahoga No. 53840, 1988 Ohio App. LEXIS 1852 (May 12, 1988). Unloaded guns have also met this definition. *State v. Tate*, 54 Ohio St.2d 444, 446, 377 N.E.2d 778 (1978). Moreover, there is no indication that the instant attack involved a nonlethal instrument such as a toy or other device that is not cable of inflicting death. *State v. Hammond*, 8th Dist. Cuyahoga No. 99074, 2013-Ohio-2466, ¶ 21. We also note that

the court's remark was not added in connection with the court's instructions on firearms specifications, which also require evidence establishing operability etc. *See* R.C. 2941.145. Therefore, although we caution against the use of the phrase "of course" in a jury charge, we find no prejudicial error in this matter.

**Sentence**

{¶ 43} In the sixth assigned error, Cooper argues that the trial court erred in sentencing him and was influenced by Palmer's day-of-sentencing disclosure that he has been receiving threats since the verdict.

{¶ 44} As an initial matter, we note that the sentence is within the range set forth for attempted murder, that is punishable by prison terms of three, four, five, six, seven, eight, nine, ten, or eleven years. R.C. 2923.02(E); 2929.14(A)(1). Additionally, the trial court stated, and the journal entries indicate, that the court considered the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12. Therefore, the sentence is presumptively valid. *State v. Colon*, 8th Dist. Cuyahoga No. 105571, 2018-Ohio-280, ¶ 7; *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15.

{¶ 45} Furthermore, prior to imposing sentence, the trial court explicitly informed Cooper that it was not going to take into account the reported alleged threats in fashioning the sentence. The trial court stated: "I've taken into account everything that the two lawyers and you have said here today, while discounting Mr. Palmer's representation of post-trial conduct to [the prosecuting attorney] as she described here this morning." (Tr. 570-571.)

**{¶ 46}** Therefore, we cannot accept Cooper's claim that the trial court erred in imposing sentence herein.

**{¶ 47}** The sixth assigned error is without merit.

**{¶ 48}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR